DEFENDERS OF WILDLIFE

**National Headquarters**
1130 17th Street, N.W. | Washington, DC 20036-4604 | tel 202.682.9400 | fax 202.682.1331
**defenders.org**

October 23, 2026

Michelle M. Spatz
Sara M. Warren
Alec Bowman
U.S. Department of Justice
Environment and Natural Resources Division

*Submitted via Email*

Re: Administrative Record in *EPIC, et al. v. NMFS, et al.*, 3:26-cv-07176-VC; *Defenders of Wildlife v. U.S. FWS, et al.*, 3:26-cv-07507-VC; and *State of California, et al. v. Burgum, et al.*, 3:26-cv-10071-VC

Counsel:

I write on behalf of counsel for all Plaintiffs in the related cases referenced above, challenging the reinterpretation of "take" under the ESA and rescission of the regulatory definitions of harm, before Judge Chhabria in the Northern District of California. We have identified several issues with the administrative record ("AR") prepared by the U.S. Fish and Wildlife Service ("FWS") and the National Marine Fisheries Service ("NMFS") (collectively, "the Services") and filed in these matters on October 7, 2026.[1] We believe that the AR has not been properly compiled and filed, and is incomplete. In an effort to resolve record issues and avoid motion practice, we detail our concerns below. We respectfully request a response to these issues by Friday, October 30.

1. **The AR has not been properly compiled and filed.**

The Services reported receipt of "approximately 358,000 public comments on the proposed rule . . . ." 91 Fed. Reg. 43300, 43302 (July 14, 2026). The AR includes copies of only two public comments: one from the Hoh Indian Tribe, and one from the Point No Point Treaty Council. AR0026, AR0300. For every other public comment, the AR index states that: "All public comments and other supporting documents on Public Docket No. FWS-HQ-ES-2025-0034, available at https://www.regulations.gov/docket/FWS-HQ-ES-2025-0034, are incorporated into the administrative record." Dkt. No. 31-1.

This highly unorthodox approach, incorporating public comments by reference, rather than producing Bates-stamped copies of each comment, is at odds with FWS and NMFS

---

[1] This letter will cite to the docket numbers of documents filed in *Defenders of Wildlife v. U.S. Fish and Wildlife Service, et al.*, 3:26-cv-07507-VC.

guidance for compiling administrative records. *See* Memorandum from David L. Bernhardt, Deputy Solicitor, Department of the Interior, "Standardized Guidance on Compiling a Decision File and an Administrative Record," (June 27, 2006) ("DOI AR Guidance") at 12 ("The AR should be organized in a logical and accessible way so that someone unfamiliar with the issue can find specific documents quickly. . . . Each document in the AR should be assigned a unique number so that it may be uniformly referred to by the parties."); Memorandum from Lois J. Schiffer, General Counsel, "National Oceanic and Atmospheric Administration Guidelines for Compiling an Agency Administrative Record," (Dec. 21, 2012) ("NOAA AR Guidance") at 13 (The first two steps of organizing and indexing the AR are: "[e]nsuring that documents and materials contained in the [AR] are organized in a logical manner . . . and [e]nsuring that documents and materials contained in the [AR] are appropriately labeled, attributed and dated.").[2]

a. <u>There is a discrepancy between the number of public comments reported as received and the number of public comments available on the Public Docket.</u>

As of the date of this letter, the referenced regulations.gov website reports that 357,699 comment submissions were received regarding the rescission of the regulatory definitions of harm; however, only 242,900 comment submissions are published to the docket. In a footnote to the Joint Case Management Statement responding to this discrepancy, counsel for Federal Defendants noted that: "Bulk submissions or mass mailings may be published on the docket just once, even though the duplicates are included in the total number of submissions received." Dkt. 34 at 11, n. 4. While this may be true, this is not a certification that all 114,799 comments reportedly received but unpublished on the docket are duplicate comments. Similarly, the AR certifications provided by the Services collectively certify only that all public comments and other supporting documents "available" on Public Docket No. FWS-HQ-ES-2025-0034 "are part of the joint administrative record . . . ." Dkt. 30-3, 30-4. They do not certify that all 114,799 public comments reportedly received but *not* available on the docket are duplicates of public comments that *are* available.

b. <u>Incorporating public comments by reference to the Public Docket impedes efficient resolution of these related cases.</u>

Incorporating public comments into the AR by reference to the Public Docket presents several difficulties in searching for, citing to, and presenting to the Court public comments during the briefing in these cases. For the Court or Plaintiffs to download all 242,900 comments—and their attachments— from regulations.gov would be a herculean task. The government is presumably much better equipped to efficiently bulk download all comments and attachments, given that regulations.gov is a government website, and in light of the fact that the government has an obligation to consider "the relevant matter presented" during the notice and comment period. 5 U.S.C. § 553(c).

---

[2] Both the DOI AR Guidance and NOAA AR Guidance are attached to the email transmitting this letter.

Further, once a comment or attachment has been found and downloaded, citing to it in briefing as the AR index suggests— "[e]ach document may be referred to by its Public Docket ID No. (beginning with FWS-HQ-ES-2025-0034-) and an internal page cite in lieu of Bates numbers[]" Dkt. 30-1—will be unwieldy and likely unclear. For instance, regulations.gov can only accept 20 files at one time. Defenders of Wildlife ("Defenders") included 54 exhibits to its public comment on the harm regulations' rescission. Accordingly, Defenders' public comment includes four separate Public Docket ID numbers, and for three of those, up to 20 individual documents share the same Public Docket ID number, making the citation format suggested in the AR index—referring to a Public Docket ID No. and internal page cites—unworkable. For example, for Public Docket ID No. FWS-HQ-ES-2025-0034-223146, there are 20 individual documents with an internal page citation of "page 1." Bates-numbering the documents in the AR is the most efficient way for all Parties—and the Court—to easily pinpoint a particular citation without confusion.

Incorporating by reference, therefore, presents significant difficulties for the partes and the Court. Citation styles will likely not be uniform (as noted above, the Public Docket ID No. and internal page citation will be insufficient). Parties will need to attach voluminous exhibits to their briefs, and/or use hyperlinks to direct the Court to download exhibits itself from a website the Court does not maintain. If the case is appealed, this will create further confusion regarding what information is included in the record on appeal. Moreover, relying on regulations.gov as the repository for the AR improperly assumes that no outages or changes to the website will occur during the pendency of the litigation, including appeals.

c. The Services should produce an administrative record that includes Bates-stamped copies of all non-duplicative public comments and attachments.

The efficient administration of these cases would be vastly improved by an AR that consists of a single repository of Bates-stamped documents, available to the Court and the parties without reliance on regulations.gov. This is the practice contemplated by both FWS and NMFS guidance, and in their collective decades of experience, counsel for Plaintiffs in these related cases are not aware of an APA case where this practice has not been followed. Plaintiffs request that the Services produce an AR that includes Bates-stamped copies of every non-duplicative public comment (including the attachments to those comments).

**2. The AR is missing documents.**

The "whole administrative record consists of all documents and materials directly or *indirectly* considered by agency decision-makers." *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989) (cleaned up). While neither courts nor the APA have enumerated a single list of what an AR must contain to be "whole," the Services' guidance provides insight into what they believe is required, including, but not limited to, documents that are missing from the AR produced here, such as: NEPA documentation, DOI AR Guidance at 6, NOAA

AR Guidance at 16; and internal communications containing factual or analytical information, including "substantive analysis," DOI AR Guidance at 7, and "directions from management not otherwise captured in the record," NOAA AR Guidance at 10.

a. The AR does not include NMFS' Categorical Exclusion Documentation for NEPA Compliance and is missing other documents referenced in the Final Rule.

Both FWS and NMFS "applied a categorical exclusion to comply with the NEPA." 91 Fed. Reg. at 43307. In the Final Rule rescinding the regulatory definitions of harm, the Services indicated that "the environmental action statement and supporting categorical exclusion documentation [is] available at https://www.regulations.gov in Docket No. FWS-HQ-ES-2025-0034." *Id.* That website includes the FWS "Categorical Exclusion Documentation for NEPA Compliance," Public Docket ID No. FWS-HQ-ES-2025-0034-242905, but includes no such documentation for NMFS. Likewise, the AR includes the FWS Categorical Exclusion Documentation, AR0036, but includes no such documentation for NMFS.

Notably, Plaintiff Defenders' Amended Complaint alleged that, "[u]pon information and belief, at the time of the filing of this First Amended Complaint, NMFS has not published a document explaining its invocation of a NEPA CE." Dkt. No. 25, ¶ 126. In answering, Federal Defendants denied this allegation, Dkt. No. 29, ¶ 126, yet the current AR contains no such documentation. If NMFS Categorical Exclusion documentation exists, it should be produced in the AR.

Other documents referenced in the Final Rule, which the Services ostensibly relied upon in making their decision, are also not included in the AR, including but not limited to: prior rulemakings[3] on the regulatory definitions of harm, *see* 91 Fed. Reg. 43300-01; legislative history regarding the definition of "take," *see id.* at 43303; rulemakings cited in support of the Services' application of a NEPA Categorical Exclusion, *see id.* at 43306-07; and Executive Orders, *see id.* at 43315. It would facilitate the efficient administration of these cases if such documents were included in the AR.

b. The AR does not include any internal or inter-agency communications and lacks a privilege log.

The "deliberative process privilege shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021). And in this Circuit, absent impropriety or bad faith, materials protected by the deliberative process privilege are not required to be included in an AR. *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444–45 (9th Cir. 2024).

[3] If the Services relied on any documents from the ARs of those prior rulemakings, those documents should also be included in this AR. *See* DOI AR Guidance at 7, NOAA AR Guidance at 8.

But factual information is not covered by the deliberative process privilege. *See F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

Indeed, as referenced above, both Services' AR guidance documents contemplate the inclusion of internal communications not protected by the deliberative process privilege in the AR. DOI AR Guidance at 7, NOAA AR Guidance at 10. Further, both Services' AR guidance instructs that the Services generate a privilege log if the agency is withholding privileged information from the AR. DOI AR Guidance at 12-13, NOAA AR Guidance at 9, 14. The AR produced in this matter does not contain a single internal FWS communication, internal NMFS communication, communication between FWS and NMFS, or communication between FWS or NMFS and another federal agency. Nor have the Services produced a privilege log of any information withheld from the AR on the basis of deliberative process, or any other, privilege.

Plaintiffs recognize that in this Circuit, materials protected by the deliberative process privilege are generally not required to be included in the AR. However, the lack of a single internal or inter-agency communication is unexpected, especially in light of the fact that, as both FWS and NMFS recognize in their AR Guidance documents, internal communications reflecting factual information are subject to inclusion in the AR. Accordingly, Plaintiffs request that the Services produce a privilege log for the AR, to enable Plaintiffs and the Court to understand what documents exist but have been withheld on the basis of privilege.

3. <u>The AR does not address the Services' use of AI in responding to comments.</u>

Federal agencies have been instructed to "lean forward on adopting effective, mission-enabling AI to benefit the American people." *See* Memorandum from Russell T. Vought, Director, Office of Management and Budget, "Accelerating Federal Use of AI through Innovation, Governance, and Public Trust," (Apr. 3, 2025), at 2. At the same time, agencies are instructed to foster public trust in federal use of AI, and "must ensure their AI use is trustworthy, secure, and accountable . . . ." *Id.* at 13.

The AR contains no information on if or how the Services used AI during the rulemaking process, including but not limited to if or how AI was used to assist in the preparation of the Services' response to public comments. If AI was used during the rulemaking process, please complete the record with any and all documentation of each model that was used, the tasks for which the model was used, the parameters governing the model's operation (including maximum context windows and any overflow errors), the knowledge base on which the model was trained, specific prompts or inputs given to the model (including system-level prompts), and specific model outputs.

Plaintiffs are available to meet and confer on this issue at your convenience. Again, we respectfully request a response to this letter by Friday, October 30.

Sincerely,

/s/ Erica H. Pencak

JANE P. DAVENPORT
(California Bar No. 193275)
ERICA H. PENCAK, *pro hac vice*
(District of Columbia Bar No. 90041087)
RYAN ADAIR SHANNON, *pro hac vice*
(Oregon Bar No. 15537)
DEFENDERS OF WILDLIFE

WILLIAM NAZAR CARLON
(California Bar No. 305739)
LAW OFFICE OF WILLIAM CARLON

*Attorneys for Defenders of Wildlife*

cc (via email):

Pete Frost, Attorney for EPIC, *et al.*
Lara Zuckerman, Tara Muller, Jennifer Loda, Heather Lewis, Susana Aguilera, Attorneys for State of California
Maggie Baker Smith, Elizabeth M. Harris, Attorneys for State of Washington
Michele Hunton, Zeus Smith, Attorneys for Commonwealth of Massachusetts
Steven Goldsetein, Attorney for State of Maryland