ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
CHARLES E.T. ROBERTS
Deputy Assistant Attorney General
United States Department of Justice
Energy and Natural Resources Division

MEREDITH L. FLAX, Deputy Section Chief
MICHAEL R. EITEL, Assistant Section Chief
MICHELLE M. SPATZ, Senior Trial Attorney (DC Bar 1044400)
SARA M. WARREN, Trial Attorney (GA Bar 966948)
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
202-598-9741 (Spatz); 202-598-5785 (Warren)
michelle.spatz@usdoj.gov; sara.warren@usdoj.gov

ALEC BOWMAN, Trial Attorney (DC Bar 90019707)
Natural Resources Section
150 M Street NE
Washington, D.C. 20002
202-532-3098
alec.bowman@usdoj.gov
*Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DEFENDERS OF WILDLIFE,<br><br>Plaintiff,<br><br>v.<br><br>U.S. FISH AND WILDLIFE SERVICE, *et al.*,<br><br>Federal Defendants. | Case No. 3:26-cv-07507-VC<br><br>Related Cases: 3:26-cv-07176-VC<br>3:26-cv-10071-VC<br><br>**FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPLETE THE ADMINISTRATIVE RECORD [Dkt. 39]**<br><br>Date: December 10, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 3, San Francisco<br>Judge: Hon. Vince Chhabria |

## TABLE OF CONTENTS

PAGE

INTRODUCTION ........ 1

BACKGROUND ........ 2

1. Justice Scalia's dissent was the best reading of the statute ........ 2

2. Every other issue was controlled by that threshold finding. ........ 3

STANDARD OF REVIEW ........ 3

ARGUMENT ........ 4

CONCLUSION ........ 9

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alaska Wilderness League v. Jewell*,
788 F.3d 1212 (9th Cir. 2015) ........ 3

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*,
515 U.S. 687 (1995) ........ 2

*Bioscience Advisors, Inc. v. SEC*,
No. 21-cv-866, 2023 WL 163144 (N.D. Cal. Jan. 11, 2023) ........ 6

*Blue Mountains Biodiversity Project v. Jeffries*,
99 F.4th 438 (9th Cir. 2024) ........ 3, 7

*California ex rel. Becerra v. Azar*,
950 F.3d 1067 (9th Cir. 2020) ........ 6, 8

*Camp v. Pitts*,
411 U.S. 138 (1973) ........ 3

*Ctr. for Biological Diversity v. Bureau of Reclamation*,
No. 25-5137, 2026 WL 3251015 (9th Cir. Oct. 28, 2026) ........ 3

*Centro de Trabajadores Unidos v. Bessent*,
167 F.4th 1218 (D.C. Cir. 2026) ........ 3

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ........ 2

*Connecticut v. United States Dep't of the Interior*,
344 F. Supp. 3d 279 (D.D.C. 2018) ........ 6

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ........ 3

*Fence Creek Cattle Co. v. USFS*,
602 F.3d 1125 (9th Cir. 2010) ........ 4

*Karuk Tribe of Cal. v. USFS*,
681 F.3d 1006 (9th Cir. 2012) ........ 3

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ........ 3

*MacClarence v. EPA*,
596 F.3d 1123 (9th Cir. 2010) .................... 6

*McCandlish v. Newrez LLC*,
3:25-cv-5553, 2025 WL 3208540 (W.D. Wash. Oct. 7, 2025).................... 7

*Nw. Env't Advocs. v. FWS*,
3:18-CV-01420-AC, 2019 WL 6977406 (D. Or. Dec. 20, 2019)....................4

*Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*,
216 F.3d 1180 (D.C. Cir. 2000) .................... 3, 6

*Vt. Yankee Nuclear Power Corp. v. NRDC*,
435 U.S. 519 (1978).................... 1, 3, 5, 6, 8

**Statutes**

5 U.S.C. § 706.................... 3, 6, 7

5 U.S.C. §§ 701-06 .................... 3

16 U.S.C. § 1532(19) .................... 2

Pub. L. No. 107-347, § 206, 116 Stat. 2899, 2915-16 (2002) .................... 7

**Rules**

Fed. R. Civ. P. 1 .................... 1

**Federal Register**

46 Fed. Reg. 54748 (Nov. 4, 1981).................... 2

64 Fed. Reg. 60727 (Nov. 8, 1999).................... 2

70 Fed. Reg. 15086 (Mar. 24, 2005).................... 7

91 Fed. Reg. 43300 (July 14, 2026).................... 2, 5

## INTRODUCTION

This case involves a single legal question: whether the Services were correct in concluding that the former regulatory definition of "harm" does not represent the single, best interpretation of the statute. The answer to that question is not found in any public comment.

In any event, Plaintiffs' motion[1] fails to rebut the presumption that the record is complete. Plaintiffs' motion to complete the record is, at bottom, a list of general grievances about the format of the record—not an attack on its completeness. Plaintiffs request that the Court impose *their* preferred record format on the agencies. That is not what the Administrative Procedure Act (APA) requires, and it would be improper for the Court to impose such a requirement here. *See Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 543-48 (1978).

First, Plaintiffs say that it would be "laborious" for them to determine whether the public docket for the rulemaking is complete—although they acknowledge they have access to a bulk data download, which provides an accounting of how the Services calculate duplicate comments. Case No. 3:26-cv-10071, Dkt. No. 71 at 6. As explained below, the record is complete.

Second, Plaintiffs argue that a record cannot be complete if it incorporates a public docket by reference. The Ninth Circuit has rejected that argument. Plaintiffs also worry about their ability to search and cite public comments in the record, and they speculate that something could happen to the public docket in the future. Courts and parties in many cases have successfully navigated the public docket on regulations.gov. And Plaintiffs, like any member of the public, are free to download the comments from the docket and search and preserve them as they see fit.

The Court should deny Plaintiffs' motion, and this case should proceed to summary judgment briefing consistent with Federal Rule of Civil Procedure 1 and the schedule ordered by the Court.

[1] Plaintiffs' joint motion was filed in all three related cases. This response is the same in all three cases except for the caption and the footer with the case style.

## BACKGROUND

Plaintiffs challenge the Final Rule rescinding the regulatory definition of "harm" as used in the Endangered Species Act's (ESA) prohibition on the "take" of endangered species. "'[T]ake' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). Previously, the Services defined "harm" within the definition of "take" to include "an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 46 Fed. Reg. 54748, 54750 (Nov. 4, 1981); *see also* 64 Fed. Reg. 60727, 60731 (Nov. 8, 1999).

In 1995, applying *Chevron* deference, the Supreme Court upheld the now-rescinded definition of "harm" as a "permissible" construction of the statute. *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 697, 703, 708 (1995) (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). In a canonical dissent, Justice Scalia explained that the ESA did not allow for the Services' now-rescinded definition of "harm" because the words Congress used to define "take" share "the sense of affirmative conduct intentionally directed against a particular animal or animals." *Id.* at 720 (Scalia, J., dissenting).

In the Final Rule, the Services followed Justice Scalia and rescinded the regulatory definition of "harm," determining that it was not the best reading of the statute. The Services reached two key conclusions:

**1. *Justice Scalia's dissent was the best reading of the statute.*** 91 Fed. Reg. 43300, 43301 (July 14, 2026). The Services expressly adopted Justice Scalia's rationale, *id.*, explaining:

> The definition of "take" should be construed to require an "affirmative act . . . directed immediately and intentionally against a particular animal—not an act or omission that indirectly and accidentally causes injury to a population of animals" 515 U.S. at 719-720 (Scalia, J., dissenting); *see also id.* at 719….

*Id.* (citation modified).

***2. Every other issue was controlled by that threshold finding***. Once the Services initiated rulemaking and concluded that Justice Scalia's definition—not the prior regulatory definition of harm—was the single, best interpretation of the statute, they had no discretion to leave the old definition in place. *Id.* (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)). Because the Services could not arrive at a different outcome, any arguments about reliance interests, consultation under the ESA, and evaluation of environmental impacts under the National Environmental Policy Act (NEPA) are irrelevant. *See Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218, 1237-39 (D.C. Cir. 2026) (APA change-in-position doctrine no longer relevant on questions of statutory interpretation); *Ctr. for Biological Diversity v. Bureau of Reclamation*, No. 25-5137, 2026 WL 3251015, at *5 (9th Cir. Oct. 28, 2026) (ESA consultation only required where agency has discretion); *Alaska Wilderness League v. Jewell*, 788 F.3d 1212, 1225 (9th Cir. 2015) (NEPA requirements not applicable where the agency lacks discretion).

## STANDARD OF REVIEW

Plaintiffs' claims fall under the judicial review provisions of the APA. 5 U.S.C. §§ 701-06; *Karuk Tribe of Cal. v. USFS*, 681 F.3d 1006, 1017 (9th Cir. 2012) (en banc). Under the APA, judicial review is limited to "the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019); *accord* 5 U.S.C. § 706. The "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam). Reviewing courts may not "impose" on any agency "a procedural requirement not provided for by Congress," or "impose upon the agency its own notion of which procedures are 'best.'" *Vt. Yankee*, 435 U.S. at 549; *Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

"An agency's statement of what is in the record is entitled to a presumption of regularity." *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 445 (9th Cir. 2024)

(citation modified). This presumption may be rebutted only by "clear evidence." *Id.* A party challenging the record bears a "heavy burden," *Fence Creek Cattle Co. v. USFS*, 602 F.3d 1125, 1131 (9th Cir. 2010), of identifying non-speculative grounds for the belief that documents were considered by the agency and not included in the record, and identifying the materials allegedly omitted from the record with "sufficient specificity" rather than proffering categories of documents that are "likely" to exist, *Nw. Env't Advocs. v. FWS*, No. 3:18-CV-01420-AC, 2019 WL 6977406, at *5 (D. Or. Dec. 20, 2019).

## ARGUMENT

The Administrative Record is complete. Public comments raising policy issues are irrelevant to the question of statutory interpretation in the Final Rule, and any "missing" comments could not be relevant to the merits issues before the Court. *See* Background, *supra*. Moreover, the Services have accounted for the public submissions they received on the rulemaking. The Services received 357,699 public submissions on the rulemaking, and that total accounts for every comment received. Decl. of Madonna Baucum[2] ¶¶ 4-16. The tally accounts for mass mailings and other comments with multiple signatories. *Id.* ¶ 12. It also accounts for three public comments that were withdrawn, and six comments that were not published to the docket.[3] *Id.* ¶¶ 13-15. More specifically, the tally reflects: 242,900 published submissions (including the three that were withdrawn), plus 114,498 (18 mass mailings), plus 331 (18 comments with multiple signatories), minus 36 (to avoid double-counting), plus 6 unpublished comments, which equals 357,699. *See id.* ¶¶ 4-16.

Plaintiffs freely acknowledge they have access to the bulk data download (which contains most of the information above), and that they could have done the accounting of duplicate comments themselves, but that it is a "laborious" "multi-step process." Case No. 3:26-cv-10071,

[2] Ms. Baucum's declaration was recently submitted in response to a motion to complete or supplement the record filed in W.D. Wash. Case No. 2:26-cv-2473, *Swinomish Indian Tribal Cmty. v. Nat'l Marine Fisheries Serv.*

[3] The Services do not object to the supplementation of the record with two of the comments that were not posted to the public docket. Those two comments are attached to this response.

Dkt. No. 71 at 6. Calculating the number of duplicates involves tallying a single column in a spreadsheet. *See* Baucum Decl. ¶ 11. In any event, Plaintiffs concede their critique is not a substantive challenge to the completeness of the record, but, rather, it is about Plaintiffs' preferences for how a record is formatted and presented. Plaintiffs' preferences cannot impose procedures beyond what the APA requires, *see Vt. Yankee*, 435 U.S. at 543-48, particularly where Plaintiffs themselves acknowledge they have the ability to undertake an accounting of how the Services tallied duplicate submissions.

Plaintiffs raise one other argument with arguable relevance to the completeness of the Administrative Record. They argue that a NEPA document is missing from the record because there is no standalone document indicating the National Oceanic and Atmospheric Administration (NOAA) invoked its own categorical exclusion. Case No. 3:26-cv-10071, Dkt. No. 71 at 10. That document is hardly "missing." As made clear in the Final Rule, FWS applied a categorical exclusion. NOAA adopted that categorical exclusion, as provided in its NEPA procedures. *See* Final Rule, 91 Fed. Reg. at 43316; AR0220. Also, Plaintiffs' argument rests on the Services' denial of an allegation in Plaintiff Defenders of Wildlife's Amended Complaint that NMFS "has not published a document explaining its invocation of *NEPA CE*." *See* Case No. 3:26-cv-7507, Dkt. No. 25 ¶ 126 (emphasis added); Dkt. No. 29 ¶ 126. That was properly denied because, as explained in the Final Rule, the Services applied Interior's categorical exclusion to comply with NEPA. *See* Final Rule, 91 Fed. Reg. at 43316. NOAA relied on *Interior's* application of a categorical exclusion. *See id.*; AR0220.

Plaintiffs' remaining quarrel with the Administrative Record is not about completeness. Rather, they take issue with the fact that the certified index refers to the public docket for the rulemaking. Plaintiffs are free to create their own exhibits of any comments they cite in their papers, or they may work with Federal Defendants to create a joint appendix at the conclusion of briefing. Furthermore, Plaintiffs who raise facial challenges to rulemakings rarely waste their allotted pages by citing their own comments. And agencies often rely on the public docket rather

than reproducing each public comment when there are voluminous comments on a proposed rulemaking. *E.g.*, *Ctr. for Biological Diversity v. Dep't of Interior*, No. 4:24-cv-4651-JST, Dkt. No. 30 (N.D. Cal. Nov. 6, 2024) (challenge to ESA implementing regulations); *North Dakota v. EPA*, 3:15-cv-59, Dkt. No. 195 (D.N.D. Apr. 16, 2018) (challenge to waters of the United States rule). To do otherwise is wasteful of time and resources. Courts also routinely cite to the public docket. *E.g.*, *MacClarence v. EPA*, 596 F.3d 1123, 1127 (9th Cir. 2010) (citing to several EPA dockets); *Bioscience Advisors, Inc. v. SEC*, No. 21-cv-866, 2023 WL 163144, at *2, *5 (N.D. Cal. Jan. 11, 2023).

For similar reasons, the Ninth Circuit has specifically rejected arguments like those Plaintiffs raise here—that it is improper to incorporate by reference materials on a public docket into an administrative record. *California ex rel. Becerra v. Azar*, 950 F.3d 1067, 1083 n.11 (9th Cir. 2020) (en banc) ("[A]ll public comments made during the rulemaking process are available online and were available to the parties in raising arguments to the district courts.… [The agency] did not omit or withhold material information from the administrative record.…"). This Circuit precedent aligns with the APA, which sets no procedural requirements on the production of all or parts of the administrative record. 5 U.S.C. § 706. The APA does not require Bates stamping, and it certainly does not dictate that the government compile and organize the record in the format most convenient for Plaintiffs. The Court therefore should reject Plaintiffs' request for the Court to impose on the agencies procedural requirements beyond those found in the APA. *See Vt. Yankee*, 435 U.S. at 543-48; *Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 316 (D.D.C. 2018) (noting that "an agency may adopt 'additional procedures' not required by statute, but the Court is 'without authority to impose such procedural requirements'" (quoting *Nat. Res. Def. Council, Inc.*, 216 F.3d at 1190)).

Even if the law permitted imposition of new procedural requirements—and it does not—Plaintiffs' arguments in support of adding new requirements lack merit.

First, Plaintiffs argue that there is no way for the Court to see past the first 1,000 comments on the docket due to a display limit. Case No. 3:26-cv-10071, Dkt. No. 71 at 6-7. The sequential review of 242,900 public comments is not required to resolve a purely legal question of statutory interpretation. *See* Background, *supra.* Nor is it the Court's responsibility to "hunt for truffles buried in the record." *McCandlish v. Newrez LLC*, 3:25-cv-5553, 2025 WL 3208540, at *1 (W.D. Wash. Oct. 7, 2025) (citation modified); *see also* 5 U.S.C. § 706 (administrative review on the record or "parts of it cited by a party"). In any event, the ability to retrieve any comment on the public docket requires only its document ID.

At most, Plaintiffs' argument is about whether *they* have the ability to review comments in a manner that suits *them*. Plaintiffs—like any other member of the public—have access to the bulk data download feature on regulations.gov. Baucum Decl. ¶¶ 5-7. Rather than scrolling through the docket manually, any member of the public can access the full text of comments for dockets on regulations.gov in a single document. The document also includes URLs with download links to any attachments to comments. If Plaintiffs prefer to review the public comments in a single document, it will take little effort on their part, as outlined in Ms. Baucum's Declaration.

Second, Plaintiffs speculate that the regulations.gov docket could be modified or taken down in the future. Case No. 3:26-cv-10071, Dkt. No. 71 at 7-8. Regulations.gov is the public interface of the Federal Docket Management System (FDMS) that was built to implement Section 206 of the E-Government Act, which requires agencies to maintain electronic rulemaking dockets. Pub. L. No. 107-347, § 206, 116 Stat. 2899, 2915-16 (2002). FDMS is "a central, electronic repository for all Federal rulemaking dockets." 70 Fed. Reg. 15086, 15086 (Mar. 24, 2005). It contemplates "preserving the entire document to be reviewed and considered as part of the rulemaking docket." *Id.* Plaintiffs' speculation about the future of the public docket is not the "clear evidence" needed to disturb the agencies' designation of the record. *Blue*

*Mountains*, 99 F.4th at 445. Indeed, Plaintiffs admit they can download a spreadsheet containing the public comments. Case No. 3:26-cv-10071, Dkt. No. 71 at 6.

Third, Plaintiffs argue that it is inefficient for Plaintiffs to cite the public docket because citing documents by their unique document ID number is "overly lengthy," and creating exhibits would require Plaintiffs "to independently recreate the AR." *Id.* at 8-9. Plaintiffs do not explain why preparing a handful of exhibits would be tantamount to "recreat[ing] the AR." *See id.* Plaintiffs also fail to demonstrate why it would instead be easier for the Court to navigate an index containing thousands of entries. The public docket also has the advantage of being just that—*public.* If any merits brief in this case actually cites a public submission on the rulemaking, it would be easier for the public to follow along with citations to the public docket than to Bates numbers. Plaintiffs complain that citing the to the public docket is cumbersome, but parties have managed this before. *E.g.*, *California*, 950 F.3d at 1083 n.11.

Fourth, Plaintiffs argue they are entitled to a "single, searchable, Bates-stamped repository of all public comments." Case No. 3:26-cv-10071, Dkt. No. 71 at 9. They are not. *See Vt. Yankee*, 435 U.S. at 543-48. Federal Defendants are not required to provide Plaintiffs with a searchable "repository" of documents. If a repository is what Plaintiffs seek, they are free to use regulations.gov. Or, if Plaintiffs want to load the text of comments, and any attachments, into a review platform with advanced search features, they have access to the comments and attachments—just as any member of the public has access to the same materials. Producing the documents in PDF format would not improve the searchability of the comments. Plaintiffs would need to use a review platform if they want to search the documents rather than opening them one by one. Plaintiffs are free to take whatever steps they wish to review the comments, but the law places no burden on Federal Defendants to take any of the steps outlined above for Plaintiffs' benefit. *See id.*

**CONCLUSION**

The record is complete, and the Court should deny Plaintiffs' motion to correct the record.

Dated: November 19, 2026

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
CHARLES E.T. ROBERTS
Deputy Assistant Attorney General
United States Department of Justice
Energy and Natural Resources Division

MEREDITH L. FLAX, Deputy Section Chief
MICHAEL R. EITEL, Assistant Section Chief

*<u>/s/ Sara M. Warren</u>*
SARA M. WARREN, Trial Attorney (GA Bar 966948)
MICHELLE M. SPATZ, Senior Trial Attorney (DC Bar 1044400)
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
202-598-5785 (Warren); 202-598-9741 (Spatz)
sara.warren@usdoj.gov; michelle.spatz@usdoj.gov

ALEC BOWMAN, Trial Attorney (DC Bar 90019707)
Natural Resources Section
150 M Street NE
Washington, D.C. 20002
202-532-3098
alec.bowman@usdoj.gov
*Attorneys for Federal Defendants*