**As of:** 7/10/25 12:47 AM
**Received:** May 16, 2025
**Status:** Do_Not_Post
**Tracking No.** mar-bnqz-4fg6
**Comments Due:** May 19, 2025
**Submission Type:** Web

# PUBLIC SUBMISSION

**Docket:** FWS-HQ-ES-2025-0034
Endangered and Threatened Wildlife and Plants; Rescinding the Definition of "Harm" Under the Endangered Species Act

**Comment On:** FWS-HQ-ES-2025-0034-0001
Rescinding the Definition of Harm under the Endangered Species Act

**Document:** FWS-HQ-ES-2025-0034-DRAFT-155356
Comment from BLM

---

## Submitter Information

**Name:** Hans Haas
**Email:** hansfhaas@gmail.com
**Government Agency Type:** Federal
**Government Agency:** BLM

---

## General Comment

See attached file(s)

---

## Attachments

HansHaasESAComment

May 15th, 2025

US Fish & Wildlife Service

Submitted via proposed rule online portal: https://www.regulations.gov/document/FWS-HQ-ES-2025-0034-0001

RE: Proposed Rule - Rescinding the Definition of Harm under the Endangered Species Act

Docket ID FWS-HQ-ES-2025-0034

Proposed Rule Review Team,

I am writing to urge you to approve this proposed rule to rescind the definition of harm under the Endangered Species Act (ESA). I recreate on public lands throughout California and throughout the United States, especially in Clevland National Forest and the Mojave Desert. I have definite plans to continue recreating on public lands in California and throughout the United States on a regular, recurring basis in the future.

Taking my family to public lands is a key facet of my children's upbringing. It's a great way to teach them to value the environment, learn about the natural world, and help them develop resilience. Access to public lands is critical for their upbringing and to other members of the community who recreate in our mountains and deserts. This important aspect of our lives has been impacted by the abuse of the ESA. The ESA has been used for decades as a method to implement restrictive management and closures of our public lands across the US. The original language of the ESA prohibited the "take" of species that are listed as Endangered or Threatened; "take" was defined as capturing, injuring or killing of a wild animal. After the passage of the ESA, unelected bureaucrats expanded the definition of the word "take" to include the term "harm" – which has created severe imbalance in implementation of ESA regulations that has resulted in widespread closures and restrictions on recreational access, economic uses, and effective landscape management of public lands.

In closing, I urge you to:

• Rescind the definition of "harm" under the ESA for the U.S. Fish and Wildlife Service, the National Marine

Fisheries Service, and the National Oceanic and Atmospheric Administration

• Isolate the ESA to the statutory definition of "take". The expanded definition of "harm" does not reflect the intended meaning of the law.

Thank you for your time and consideration.

Respectfully,

Hans Haas

Desert Advisory Council

Bureau of Land Management

# PUBLIC SUBMISSION

**As of:** 7/10/25 12:47 AM
**Received:** May 16, 2025
**Status:** Do_Not_Post
**Tracking No.** mar-dpo6-ryz1
**Comments Due:** May 19, 2025
**Submission Type:** Web

**Docket:** FWS-HQ-ES-2025-0034
Endangered and Threatened Wildlife and Plants; Rescinding the Definition of "Harm" Under the Endangered Species Act

**Comment On:** FWS-HQ-ES-2025-0034-0001
Rescinding the Definition of Harm under the Endangered Species Act

**Document:** FWS-HQ-ES-2025-0034-DRAFT-156574
Comment from Pacific Flyway Council

---

## Submitter Information

**Name:** Blair Stringham
**Email:** jason.schamber@alaska.gov
**Government Agency Type:** State
**Government Agency:** Pacific Flyway Council

---

## General Comment

See attached file(s). A letter from the Pacific Flyway Council regarding the proposed Rescinding the Definition of Harm under the Endangered Species Act

---

## Attachments

PFC_Letter recinding harm definition_13may2025

# PACIFIC FLYWAY COUNCIL

Alaska ▪ Arizona ▪ California ▪ Colorado ▪ Idaho ▪ Montana
Nevada ▪ New Mexico ▪ Oregon ▪ Utah ▪ Washington ▪ Wyoming

May 15, 2025

Dear Secretaries Burgum and Lutnick,

The Pacific Flyway Council (Council) represents state fish and wildlife agencies of the 12 western states (AK, AZ, CA, CO, ID, OR, MT, NM, NV, UT, WA, and WY). We work closely with federal agencies to sustain and enhance migratory bird populations across the U.S., Canada, and Mexico.

We write today in response to key definition changes in the Endangered Species Act as proposed. The Council opposes removing the definition of "harm" as it pertains to habitat modification under the Endangered Species Act (ESA). This action will significantly weaken the ESA's ability to protect listed bird species and create a cascade of negative consequences for conservation efforts across the Pacific Flyway. Habitat modification (i.e., loss and degradation from human activities) is the most common form of take for migratory bird species. Limiting habitat protections will increase the risk of extinction for currently listed species and increase the potential for additional species to be listed in the future as populations of threatened species further decline.

Council disagrees that the Services' current regulatory definition of "harm" does not represent the single, best meaning of the statutory text and that the proposed change will better reflect the best reading of the statute, which is to prohibit actions that impair or hurt the habitat of protected species. We believe it is misguided to rescind the current definition of "harm." Rather, the current definition of "harm" is fundamental to achieving species recovery, which is the primary purpose of the ESA and entirely in line with congressional intent as affirmed by case law. Protecting habitats is critical to protecting the species that live there - these concepts should not be separated.

Currently, "harm" includes habitat modification (i.e., habitat loss or degradation) that impairs essential behaviors such as breeding, feeding, or sheltering. The proposed language would remove habitat loss or degradation from this definition unless the species is physically present at the time of impact. This narrower definition would exclude from ESA protection all distinct seasonal or intermittent habitats used by migratory birds and allow wholesale destruction of migratory bird habitat. Rescinding the current definition of "harm" would also undermine habitat protections for all migratory birds and other game and non-game species that share habitats with listed species. Habitat modification is the most significant threat to nearly every migratory bird species in North America, ESA-listed or not, and habitat protections have been critical to reducing population declines, preventing additional listings, and preventing species extinctions.

Examples of this effort and successful delisting and recovery of species include the Bald Eagle and Peregrine Falcon.

Rescinding the current definition of "harm" would also create unnecessary ambiguity and inefficiencies. The proposed action invites protracted court interventions, which will not benefit wildlife. It runs counter to established legal precedent and common-sense understandings of how habitat destruction harms both individuals and populations. Moreover, it is likely to create inconsistent local definitions as each Circuit Court interprets this new ambiguity. There is a considerable body of case law that affirms and upholds the current definition of "harm," including the 1995 decision of the U.S. Supreme Court in *Babbit v Sweet Home*. The comprehensive nature of the ESA, combined with Congress's explicit reference in the ESA (Section 2 (b)) to the conservation of 'the ecosystems upon which endangered and threatened species depend' as the stated purpose of the Act, supports the current definition of "harm." The proposed change is certain to be locked in litigation, costing significant time and financial resources that could be better directed towards on-the-ground conservation, and shifts the burden of conservation to the states.

State-managed migratory birds benefit from the current definition of "harm" because it is a key incentive for avoiding and mitigating habitat impacts. The understanding that habitat modification constitutes "harm" encourages project proponents to proactively avoid or minimize impacts to sensitive areas. Without a clear federal definition of "harm," states will face increased pressure to develop their own regulations and interpretations, leading to inefficiencies and potential inconsistencies across jurisdictions. Regulatory discontinuities are an especially difficult challenge for migratory birds that regularly cross jurisdictional boundaries. This undermines existing agreements, disrupts state investments in conservation, and creates misalignment with established state-federal partnerships and conservation frameworks, weakening our ability to meet our core mission to protect wildlife and their habitats.

The proposed change would introduce a large degree of regulatory uncertainty to state agency processes that will cause project delays, increase costs, and diminish services. Changing the definition of "harm" will create ambiguity in evaluating take or risk, especially where habitat has been used as a surrogate measure, potentially creating delays or invalidating conservation efforts. Removing the definition of "harm" will undoubtedly increase the costs of management, conservation, and development due to heightened regulatory uncertainty and potential for more litigation, whereas clarity improves states' ability to manage birds consistently with state law and constituent expectations. Systemic efficiencies are maximized for both wildlife managers and project proponents, where regulatory certainty is maintained. Ambiguity reduces the likelihood of successful conservation outcomes. As the Flyway Council stated in our previous communication regarding incidental take permitting, we believe that legal certainty provides industry with a stronger foundation for partnership with state agencies. Many states rely on a partnership with the Service to consult on best management practices to minimize take. Clear

regulations also provide for national consistency in the interpretation and implementation of beneficial practices.

Finally, we disagree that this action can be categorically excluded from further National Environmental Policy Act (NEPA) review. Under 43 CFR 46.205 (c (1)), any action normally categorically excluded must be evaluated to determine if it meets any of the extraordinary circumstances under 43 CFR 46.215. The Council believes that the proposal to rescind the regulatory definition of "harm" in the Endangered Species Act meets the definition of extraordinary circumstances under 43 CFR 46.215 (b–e; h) and thus merits further analysis and preparation of environmental documents. Categorical exclusions are classes of actions that do not individually or cumulatively have a significant effect on the human environment, and this proposed rule does not meet that definition. The Council asks that the Services undergo a comprehensive environmental review of the proposed rule, including analysis of the status quo. Through this comprehensive analysis, we seek further clarification on the likely implications of this deregulatory action, specific examples of actions that would be permitted under the revised version of the ESA, impacts on the capacity of the ESA to achieve its principal purpose of delisting species, and economic impacts, among others. We additionally seek clarification on how this may impact protections afforded under Section 9 of the Act and the designation and protection of critical habitat. We look forward to providing further detailed comments at that time.

In conclusion, the Pacific Flyway opposes rescinding the definition of "harm" because it will weaken the ESA's ability to protect endangered species, create legal uncertainty, and undermine critical conservation efforts, while also counterproductively increasing ambiguity and regulatory burdens on states. We urge you to maintain the current definition of "harm" to ensure the continued protection of our nation's migratory bird populations.

Sincerely,

Blair Stringham Pacific Flyway Council Chair